UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

```
REBECCA TROSPER,                    )
                                    )  No. CV-09-03048-JPH
            Plaintiff,              )
                                    )  ORDER GRANTING DEFENDANT'S
v.                                  )  MOTION FOR SUMMARY JUDGMENT
                                    )
MICHAEL J. ASTRUE, Commissioner     )
of Social Security,                 )
                                    )
            Defendant.              )
                                    )
                                    )
```

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on April 16, 2010   (Ct. Recs. 15,18). Attorney D. James Tree represents plaintiff; Special Assistant United States Attorney L. Jamala Edwards represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge (Ct. Rec. 8). On March 9, 2010, plaintiff filed a reply (Ct. Rec. 20). After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 18) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 15).

## JURISDICTION

Plaintiff protectively applied for supplemental security income (SSI) on October 13, 2004, alleging onset due to degenerative disc disease (DDD) and fibromyalgia as of January 1,

1993 (Tr. 60). The application was denied initially and on
reconsideration (Tr. 47-48, 51-54).

A hearing was held June 12, 2007, before Administrative Law
Judge (ALJ) Linda Haack. Plaintiff, represented by counsel, and
vocational expert Gail Young testified (Tr. 621-648). On April 16,
2008, the ALJ issued her decision finding at step five plaintiff
could perform other work existing in the national economy (Tr. 15-
26). Accordingly, the ALJ found plaintiff not disabled as defined
by the Act (Tr. 26). On March 25, 2009, the Appeals Council denied
review (Tr. 5-8). Therefore, the ALJ's decision became the final
decision of the Commissioner, which is appealable to the district
court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action
for judicial review pursuant to 42 U.S.C. § 405(g) on May 15, 2009
(Ct. Recs. 2,4).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing
transcript, the ALJ's decision, the briefs of both parties, and
are summarized here.

Plaintiff was 20 years old when she protectively filed her
application, and 23 the date of the ALJ's decision. She earned an
adult high school diploma in 2003 with GPA of 3.4 (Tr. 26-
27,66,225,624). Although Ms. Trosper has no reported earnings for
the past 15 years, she admits she has worked at times as an in-
home child care provider (Tr. 25, 61). Plaintiff alleges
disability due to DDD, fibromyalgia, migraine headaches,
depression, anxiety, a pain disorder, and post-traumatic stress
disorder (PTSD).

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                    - 3 -

impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   At this step, plaintiff's residual functional capacity ("RFC") assessment is considered. If plaintiff cannot perform this work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                          - 4 -

Cir. 1984).

Plaintiff has the burden of showing that drug and alcohol addiction (DAA) is not a contributing factor material to disability. *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001). The Social Security Act bars payment of benefits when drug addiction and/or alcoholism is a contributing factor material to a disability claim. 42 U.S.C. §§ 423 (d)(2)(C)and 1382(a)(3)(J); *Bustamante v. Massanari,* 262 F.3d 949 (9th Cir. 2001); *Sousa v. Callahan*, 143 F.3d 1240, 1245 (9th Cir. 1998).  If there is evidence of DAA and the individual succeeds in proving disability, the Commissioner must determine whether DAA is material to the determination of disability. 20 C.F.R. §§ 404.1535 and 416.935. If an ALJ finds that the claimant is not disabled, then the claimant is not entitled to benefits and there is no need to proceed with the analysis to determine whether substance abuse is a contributing factor material to disability. However, if the ALJ finds that the claimant is disabled, then the ALJ must proceed to determine if the claimant would be disabled if he or she stopped using alcohol or drugs.

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by

substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989)(*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or

nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### ALJ'S FINDINGS

At the hearing plaintiff amended onset to the protective filing date of October 13, 2004 (Tr. 631). The ALJ used the amended onset date (Tr. 15-17). At step one, the ALJ found plaintiff has not engaged in substantial gainful activity since she applied for benefits. Although plaintiff admitted working as what the DOT calls a "child in-home monitor/nanny," she has no reported earnings (Tr. 17). At steps two and three, the ALJ found plaintiff suffers from DDD and depression, impairments that are severe but which do not alone or combination meet or medically equal a Listed impairment (Tr. 18, 22). The ALJ found plaintiff less than completely credible (Tr. 24). At step four, she found plaintiff has no past relevant work because she has no reported earnings (Tr. 25). Relying on the VE, the ALJ found at step five plaintiff's RFC for a range of light work enables her to perform other jobs, such as messenger, fast food worker, and sales attendant (Tr. 26). Because the ALJ found plaintiff could perform other work, she found Ms. Trosper is not disabled as defined by the Social Security Act (Tr. 26). The ALJ found DAA has been in sustained remission at least since onset on October 13, 2004 (Tr. 17). Accordingly, DAA was not at issue in this case, both because DAA was not a severe impairment during the relevant period, and because the ALJ found plaintiff not disabled.

### ISSUES

Plaintiff contends the Commissioner erred as a matter of law by failing to properly weigh the treating, examining and reviewing

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                    - 7 -

professionals' opinions, and this error caused the ALJ to improperly assess plaintiff's RFC (Ct. Rec. 16 at 11). The Commissioner asks the Court to affirm the decision asserting it is supported by the evidence and free of harmful error (Ct. Rec. 19 at 15).

**DISCUSSION**

**A. Weighing medical evidence**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947, F.2d 341, 345 (9th Cr. 1991).

A treating physician's opinion is given special weight because of familiarity with the claimant and the claimant's physical condition. *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989)(citations omitted). More weight is given to a treating physician than an examining physician. *Lester v. Cater*, 81 F.3d 821, 830 (9th Cir. 1995). Correspondingly, more weight is given to the opinions of treating and examining physicians than to

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                    - 8 -

nonexamining physicians. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1435, 1463 (9th Cir. 1995).

In addition to the testimony of a nonexamining medical advisor, the ALJ must have other evidence to support a decision to reject the opinion of a treating physician, such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747,751-52 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1042-43 (9th Cir. 1995).

**B. Step two findings - physical impairment**

Plaintiff alleges the ALJ erred at step two when she failed to find Ms. Trosper suffers from the severe impairments of migraine headaches and fibromyalgia(Ct. Rec. 16 at 11-17).

*Migraine headaches*

The record shows (1) on May 2, 2006 (about a year and a half after onset), plaintiff reports migraine and regular headaches; is under a lot of stress due to caring for her two children plus helping her mother with nieces and nephews. A drug, inderal, is prescribed to prevent migraine; she will follow up in two weeks (Tr. 370). (2) At follow up, plaintiff does not mention migraine headaches (Tr. 371). (3) In early November of 2006, plaintiff

learned she was pregnant and stopped all medication except celexa for depression (Tr. 395). During the six month period plaintiff took indera, she does not mention migraine headaches (Tr. 371-395). (4) On 2/8/07, plaintiff complained of migraine along with fever, cough, and congestion  (Tr. 403). About three weeks later (on 2/28/07) plaintiff, 18 weeks pregnant, sought care in the ER for migraine (Tr. 279, 281). (5) In March of 2007, plaintiff lists "migraines" as a new problem, more than two years after onset. Her expected delivery date was July 8, 2007 (Tr. 112).

The Commissioner correctly points out "no treating source [has] indicated functional limitations stemming from headaches that would affect plaintiff's ability to perform basic work activities" (Ct. Rec. 19 at 8; Tr. 20).

The ALJ considered plaintiff's credibility when she weighed severity at step two, outlined more fully below.

The record fully supports the ALJ's determination migraine headaches are not a severe impairment as defined by the SSA, because no treating source has so opined. In addition, the condition appears effectively controlled with medication. *Warre v. Comm'r of Soc. Sec. Amin.*, 439 F.3d 1001,1006 (9th Cir. 2006)(impairments effectively controlled with medication are not disabling for purposes of determining eligibility for benefits).

*Fibromyalgia*

Plaintiff contends the ALJ should have found she suffers from the severe impairment of fibromyalgia. The Commissioner argues Daniel Sager, M.D., indicated only "features of the fibromyalgia syndrome are present" and his impression was of "fibromyalgia syndrome" but he failed to indicate he diagnosed fibromyalgia or,

more importantly, "indicate he had established this diagnosis through trigger point evaluation." (Ct. Rec. 19 at 6-7, observing at fn 1 that one of the diagnostic criteria is 11 or more of 18 positive trigger points), citing *Rollins v. Massanari*, 261 F.3d 853, 856-857 (9th Cir. 2001) and a website containing the American College of Rheumatology diagnostic criterion.

A treating PAC, Steve Koontz, referred plaintiff to Dr. Sager, a rheumatologist (Tr. 122). On January 23, 2004 (about ten months before onset), Dr. Sager points out he had no MRI to review. He found no rheumatologic findings. He opined there is "no current strong evidence for a systemic inflammatory or rheumatic disease," although "features of the fibromyalgia syndrome are present, with a focus of chronic pain in the low back region" (Tr. 122-123). On February 12, 2004, Mr. Koontz observes Dr. Sager recommended essentially supportive care for plaintiff's chronic back pain (Tr. 143, referring to Tr. 123). The ALJ indicates on February 20, 2004, Dr. Sager lists plaintiff's problems as fibromyalgia syndrome and chronic low back pain, with "unremarkable further diagnostic study, radiographs and lab," as well as "general report of improvement in symptoms with stress reduction, since last seen." Dr. Sager recommended an antidepressant for chronic pain management (Tr. 19, referring to Exhibit 19F/2 at Tr. 524).

Treating doctor Charles Miller, M.D., noted on February 12, 2004, "Dr. Sager advised her that she may have fibromyalgia, although she did not meet all the criteria for this" (Tr. 505). All of these records predate onset on October 13, 2004.

Physical therapy records dated just after onset indicate

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 11 -

"fibromyalgia onset 2004, status discharged from care" (Tr. 148).
Plaintiff fails to establish the alleged impairment met the
durational requirement.

Perhaps the most significant factor relied on by the ALJ is
plaintiff's work as a child care provider at times throughout the
record during the relevant period of October 13, 2004, through
April 16, 2008, in addition to caring for her own young children
as a single parent (Tr. 17), citing Exhibit 13E: on June 15, 2007,
plaintiff stated her children were aged 2 and 4, and her third
child was due next month (Tr. 118-119); in January of 2004,
plaintiff told Dr. Sager "she cares for other children for work"
(Tr. 122).

The ALJ notes plaintiff apparently worked caring for other
children through May 2, 2006 (Tr. 18), referring to Exhibit
14F/65: on May 2, 2006, C. Denise Heard, FNP, notes plaintiff
reports "[l]ots of stress with caring for her two daughters and
helping her mother with her nieces and nephews. Hoping to move
into her own home in a few weeks" (Tr. 370).

An ALJ may properly reject medical opinions proffering
limitations inconsistent with the level of activity a plaintiff
engages in by maintaining a household and raising two young
children, with no significant assistance from a spouse. *See
Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). In this
case, the ALJ additionally relied on evidence plaintiff cared for
more children than her own, indicating an even higher degree of
physical functioning. While at times plaintiff has  stated she had
help from her extended family, the ALJ found she was not credible
(see below).

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                            - 12 -

*Credibility*

To aid in weighing the conflicting medical evidence, the ALJ evaluated plaintiff's credibility. Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition. *See Webb v. Barnhart*, 433 F.3d 683,688 (9th Cir. 2005).

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035,1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715,722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821,834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F. 3d 915,918 (9th Cir. 1993).

ALJ Haack gave clear and convincing reasons for her credibility assessment, including inconsistencies between testimony and statements to providers (Tr. 23). The ALJ notes plaintiff testified she averages two migraine headaches a week, but "that claimed frequency of headaches is clearly not consistent with or supported by the medical evidence of record" (Tr. 23,

referring to testimony at Tr. 629). An ALJ may properly consider inconsistencies in a claimant's statements  when assessing credibility. *Thomas v. Barnhart*, 278 F.2d 947, 958-959 (9th Cir. 2002).

When asked about physical pain, the ALJ notes plaintiff alleged pain in her right hip and right leg, in addition to chronic back pain; however, as the ALJ correctly observes, the "record reflects no findings, signs or etiology to corroborate any radiculopathy or pain in the right hip/leg" (Tr. 23, referring to testimony at 627). The ALJ relies on the July 12, 2005, examination by neurologist Huong Le, M.D., who noted plaintiff does not describe true radicular pain and denied significant weakness or numbness. Sensation in all extremities was intact. After reviewing the MRI, Dr. Le opined there is no significant nerve compression (Tr. 19-20, citing Exhibit 11F at Tr. 255, 258). The ALJ notes follow up spinal x-rays on March 1, 2006, revealed "no significant narrowing (i.e., stenosis) of the spinal canal" (Tr. 20, citing Exhibit 10F/1-2).

A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided that it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991).

The ALJ found plaintiff's daily activities are inconsistent with the degree of disability alleged. Ms. Trosper testified she can sit, stand and walk for no more than ten minutes each (Tr. 625). As the ALJ points out, this is inconsistent with plaintiff's acknowledgment she sweeps, mops, vacuums, dusts, makes beds, does laundry, and picks up after er children, ages two and four (Tr.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                           - 14 -

23, referring to testimony at Tr. 623-624, 634). In addition,

plaintiff feeds, dresses,

bathes, and changes the diapers of her disabled two year old,  and

drives 60 miles a week, to medical appointments and her parents'

home (Tr. 623,635-636).

An ALJ may properly consider the claimant's activities of
daily living when weighing credibility. *Thomas*, 278 F.2d at 958-
959. The ALJ's reason is clear, convincing and supported by
substantial evidence.

The ALJ's reasons for finding plaintiff less than fully
credible are clear, convincing, and fully supported by the record.
*See Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir.
2002)(proper factors include inconsistencies in plaintiff's
statements, inconsistencies between statements and conduct, and
extent of daily activities).

The ALJ's reasons for finding at step two plaintiff does not
suffer from the severe impairments of migraine headaches and
fibromyalgia are specific, legitimate, and fully supported by the
record.

**C. RFC - assessed physical limitations**

Plaintiff alleges the ALJ's reasons for rejecting
limitations assessed by treatment provider Nurse Heard and her
supervising physician, Cindy Horton, M.D., are "faulty." They
opined from 2001 to the present, plaintiff needed to lie down for
20 minutes, 3-4 times a day (Ct. Rec. 16 at 18-21, referring to
Tr. 408-409).

The ALJ notes the referenced opinion was originally signed on
March 27, 2007, solely by Nurse Heard, a non-acceptable medical

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 15 -

source (Tr. 24). A duplicate was later submitted with Dr. Horton's
signature (Id., citing Exhibit 15F). The ALJ notes

> there are no treatment records from a 'Dr. Horton'
> anywhere in the file for the period alleged of '2001
> to the present.' In fact, records from Nurse Heard
> do not appear in the record until 2005.

(Tr. 24).

Plaintiff asserts the ALJ erred factually, and cites chart
notes with Dr. Horton's initials (Ct. Rec. 16 at 19, referring to
Tr. 144,413-416,422) indicating she reviewed the work of nurses
and assistants. She also cites Dr. Horton's chart notes (Tr. 135,
293, 361, 415, 423 and 444), dating back to at least June 4, 2001,
when she saw plaintiff for low back pain (Id). The Commissioner
essentially argues the ALJ's error if any is harmless because
these records are either outside the relevant period or pertain to
routine complaints, and therefore have no relevance to the ALJ's
disability determination (Ct. Rec. 19 at 11-12).

The Commissioner is correct. More than three years before
onset (June 4, 2001) Dr. Horton treated plaintiff for a urinary
tract infection (UTI) (Tr. 422). Pre-onset in 2003, plaintiff felt
"great" as a result of taking paxil for post-partum depression
(Tr. 144). About a month before onset, Victoria Hopkins, PA,
discussed with Dr. Horton probable round ligament pain related to
pregnancy (Tr. 135). PA Eric Stroud notes in March of 2006 Dr.
Horton "worked the patient up for her lower right quadrant pain,"
later diagnosed as appendicitis (Tr. 293). Dr. Horton saw
plaintiff 8/8/2005 because her young daughter "stepped on"
[plaintiff's] breast (Tr. 361).

The other records plaintiff cites all relate to Dr. Horton's
treatment or oversight pre-onset. (1) Plaintiff, age 16, is doing

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                              - 16 -

much better on paxil (4/9/2001); symptoms including back pain are
consistent with UTI (6/4/2001)(**Tr. 423**). (2) Plaintiff complains
of fatigue, headaches, low back pain, and irregular periods
(6/11/01); abdominal pain improved, back pain worse, referred to
PT and prescribed anti-inflammatories (6/15/2001)(**Tr. 422**). (3)
Plaintiff has postpartum depression, and increased back pain due
to nursing and lifting (**Tr. 415**), bronchitis, acne and needs birth
control (2/26/2003 –9/12/2003)(**Tr. 415-416**)(4) Plaintiff has a
viral upper respiratory infection; her post-partum depression is
"a lot better" with medication change; skin lesions (9/15/2003-
10/3/2003)(**Tr. 414**). (5) Plaintiff complains of back pain; MRI
results for DDD "fairly good"; needs depression medication refill;
has bronchitis (11/17/2003 –12/1/2003)(**Tr. 413**).

More importantly, plaintiff admits the ALJ rejected Nurse
Heard and Dr. Horton's contradicted opinion for other reasons,
including a lack of support in the medical record for the fill-in-
the-blank RFC (Ct. Rec. 16 at 20). Citing *Meanel v. Apfel*, 172
F.3d 1111,1113-1114 (9th Cir. 1999) and *Young v. Heckler*, 803 F.2d
963,968 (9th Cir. 1986), the Commissioner correctly observes an
opinion that is conclusory and inconsistent with the rest of the
evidence is properly rejected (Ct. Rec. 19 at 11). The
Commissioner also correctly observes the assessed limitations are
not supported by any other treating or examining professional
during the relevant period.

Another specific and legitimate reason the ALJ rejected this
opinion is its inconsistency with plaintiff's testimony as to her
limitations (Tr. 24). The ALJ's reason is supported by substantial

evidence. Plaintiff's testimony included no need to lie down, as the ALJ points out, and "she reports considerably more functioning on a daily basis" than assessed (Tr. 24). Plaintiff's testimony inconsistent with a treating physician's opinion is by itself a specific, legitimate reason, in this instance supported by substantial evidence, to reject a treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751-752 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1042-1043 (9th Cir. 1995).

When, as in this case, a claimant's credibility has been permissibly discounted, the ALJ may also disregard an opinion based on subjective complaints. *Tonapetyan v. Halter*, 242 F.3d 1144,1149 (9th Cir. 2001).

**D. Step two findings - mental impairment**

Plaintiff alleges the ALJ erred when she failed to find anxiety, pain disorder, and PTSD severe impairments at step two (Ct. Rec. 16 at 11, 16-17).

On April 29, 2005, about six months after onset, Dr. McCollum examined plaintiff (Tr. 221-227). Ms. Trosper stated she took care of children for her mother from November of 2002 through June of 2003 (Tr. 225). As the ALJ observes, this statement is inconsistent with reports to medical providers she also did this work from January of 2004 through May 6, 2006 (Tr. 21, citing Exhibits 4F/1-3, 12F/63, and 14F/654p; Tr. 225).

Dr. McCollum diagnosed depressive disorder, moderate, DAA in partial to sustained remission, PTSD, and a pain disorder associated with both psychological factors and a general medical condition. He assessed a GAF of 60 (Tr. 227). The parties are

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 18 -

correct the ALJ erred when she mistakenly indicates Dr. McCollum failed to diagnose PTSD (Tr. 23). Dr. McCollum notes Ms. Trosper admitted using methamphetamine for five months until she got pregnant, as the ALJ observes (Tr. 21, 224). Plaintiff was pregnant at the time of the evaluation. Her daughter Ariana was two years old (Tr. 221, 224).

When she rejected some of Dr. McCollum's contradicted assessed limitations, the ALJ points out:

"Of particular note in regard to the diagnosis of pain disorder, Dr. McCollum opined: 'She likely realizes secondary gain from this hypochondrial orientation.'" (Tr. 21, referring to Tr. 226). Motivation of secondary gain and the ALJ's negative credibility assessment are specific, legitimate reasons for discrediting some of Dr. McCollum's assessed limitations. *See Tonapetyan*, 242 F.3d at 1149.

Dr. McCollum relied on plaintiff's reported diagnosis of fibromyalgia when he diagnosed a pain disorder. As noted, the ALJ found the medical evidence does not support plaintiff's assertion (Tr. 21).

The ALJ rejected some of Dr. McCollum's limitations based on plaintiff's lack of history of mental health care (Tr. 21).

Unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. *Fair v. Bowen*, 885 F.2d 597,603 (9th Cir. 1989).

The ALJ appropriately rejected some of Dr. McCollum's assessed limitations because they are contradicted by medical evidence. She also rejected his opinions to the extent they appear to be based in part on plaintiff's unreliable self-report.

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                                    - 19 -

Both are specific legitimate reasons supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211,1216 (9th Cir. 2005)(an ALJ is not required to credit opinions based on plaintiff's unreliable self-reporting).

The ALJ's RFC limited plaintiff to simple, routine, repetitive work (Tr. 25). The mental limitations assessed by the ALJ are supported by the record. Plaintiff's ability to work caring for children at times during the relevant period is simply one factor that undermines allegedly disabling mental limitations.

Plaintiff fails to meet her burden of proving that her alleged mental impairments "significantly limit" her mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c)(2007); *see also Burch v. Barnhart*, 400 F.3d 676, 682-683 (9th Cir. 2005). The ALJ's error with respect to the PTSD diagnosis is unlikely to change the result, given the record in this case. An error is harmless when the correction of that error would not alter the result. *See Johnson v. Shalala*, 60 F.3d 1428, 1436 n9 (9th Cir. 1995). An ALJ's decision will not be reversed for errors that are harmless. *Burch,* 400 F.3d at 679.

The ALJ appropriately relied on plaintiff's credibility when she assessed the contradictory opinions of mental limitations. The ALJ's other reasons, including diagnoses based on plaintiff's unreliable self-report, the lack of mental health treatment, and plaintiff's ability to perform some work during the relevant period are specific, legitimate and fully supported by the record.

The ALJ is responsible for reviewing the evidence and

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                        - 20 -

resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747,751 (9th Cir. 1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405 (g).

The ALJ's assessments of the evidence of mental impairment and of plaintiff's credibility are supported by the record and free of legal error.

**E. Step five**

Plaintiff alleges error at step five (Ct. Rec. 16 at 23). The argument has already been addressed. Because the ALJ's RFC and hypothetical question to the VE were based on the limitations the ALJ found supported by the evidence, as required (*see Osenbrock v. Apfel*, 240 F.3d 1167, 1164-1165 (9th Cir. 2001), the ALJ properly relied on the jobs identified by the VE. *Bayliss*, 427 F.3d at 1217-1218.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this Court finds the ALJ's decision is free of harmful legal error and supported by substantial evidence..

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 18)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 15)** is **DENIED.**

1    The District Court Executive is directed to file this Order,

2  provide copies to counsel for Plaintiff and Defendant, enter

3  judgment in favor of Defendant, and **CLOSE** this file.

4    DATED this 4th day of June, 2010.

5

6                              s/ James P. Hutton

7                           JAMES P. HUTTON
                        UNITED STATES MAGISTRATE JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT                          - 22 -